**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

WYNOMA P. HOLLIS,

        Plaintiff,

vs.                                             Case No. 3:12-cv-1358-J-99MMH-JRK

CBS TV 47 and FOX 30 / CLEAR
CHANNEL BROADCASTING and
JACKSONVILLE HUMAN RIGHTS
COMMISSION,

        Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on the Affidavit of Indigency (Doc. No. 2), that the Court construes as a Motion to Proceed In Forma Pauperis ("Motion"), filed December 17, 2012.[2] Simultaneously with the Motion, Plaintiff filed a Complaint (Doc. No. 1). On January 16, 2013, the Motion was referred to the undersigned.[3] Upon review of the Complaint and the file, the undersigned recommends that the Motion be denied and that this case be dismissed for the reasons stated below.

---

    [1]    Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within fourteen (14) days after service of this document. Failure to file a timely objection waives a party's right to a de novo review. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a).

    [2]    The undersigned received a letter from Plaintiff on March 21, 2013, that in part addressed Plaintiff's financial condition. The undersigned delivered the letter to the Clerk's Office for filing (Doc. No. 7). The letter was stricken, and Plaintiff was advised that she shall not correspond with the Court or any Judge or Magistrate Judge of the Court in letter form. Order (Doc. No. 8), entered March 22, 2013.

    [3]    This case was originally assigned to the Honorable Joel B. Toomey, United States Magistrate Judge. On January 15, 2013, the case was reassigned to the undersigned. See Order (Doc. No. 5).

## I. Background

### A. Plaintiff's First Action in this Court

It is apparent from the face of Plaintiff's Complaint that this case is similar, if not nearly identical, to a previous case filed by Plaintiff. See Hollis v. CBS TV 47/Clear Channel Broadcasting, Inc., No. 3:12-cv-483-J-34JRK (dismissed Nov. 5, 2012) ("First Action"). Plaintiff initiated the First Action by filing a complaint (Doc. No. 1, First Action) on April 27, 2012. Plaintiff subsequently amended her complaint. See Am. Compl., First Action, filed May 18, 2012. In the amended complaint, Plaintiff asserted she was discriminated against on the basis of her race and religion in violation of "the 1964 Civil Rights Act, Title II, Title VII and the [Fourteenth] Amendment in the U.S. Constitution." Am. Compl. (Doc. No. 5, First Action), at 3, 6. According to Plaintiff, she authored a book entitled, "Holy Days and Holidays: The Truth About the Sabbath, Easter and Christmas." Id. at 1. To promote her book, Plaintiff purchased two months worth of website advertisements from CBS TV 47. Id. Plaintiff requested an on-camera interview with CBS TV 47, but the request was denied. Id. Plaintiff asserted that CBS TV 47's reason for denying Plaintiff's request for an interview "was the topic was 'too heavy and it might alienate some in the community.'" Id. (emphasis omitted).

Plaintiff alleged that in May 2010, the same television station interviewed "a white university professor promoting his Christian book." Id. at 2. Plaintiff noted that after she watched the interview of the university professor, she became upset because the station had not provided her the same opportunity as the professor. Id. On June 22, 2010, Plaintiff apparently "went to Jacksonville Human Rights Commission (["]JHRC["]) and filed a discrimination Complaint." Id. at 3. The JHRC "denied her complaint," and Plaintiff

contended that she named JHRC as a defendant for their "dereliction of duty" by denying her complaint. Id.  As relief, Plaintiff requested $1.3 million from CBS TV 47 and $200,000 from JHRC. Id. at 13.

After filing the amended complaint in the First Action, on July 17, 2012, Plaintiff filed a supplement (Doc. No. 10, First Action).  Plaintiff filed the supplement because she "believe[d] th[e] information w[ould] further show that her complaint of discrimination by [CBS] TV 47 is valid." Id. at 1.  In the supplement, Plaintiff alleged that she had a garage sale on April 17, 2010 to raise money to help with the expenses of her granddaughter's death. Id. Plaintiff contended that a reporter from CBS TV 47 came "to her house to do a preview of the garage sale on April 16." Id.  While the reporter was at Plaintiff's house, "Plaintiff asked the reporter if he would show in the story that she would be signing copies of her book . . . at the sale." Id.  When the story about Plaintiff's garage sale aired, the book was not shown. Id. at 2.  Plaintiff then explained that on July 13, 2010 "CBS TV 47 aired a story about Pastor Terry Jones, a white preacher" who authored a religious book. Id.  Plaintiff contended that this was another example of discrimination because she "was not given the same treatment with her book." Id.

On July 6, 2012, the undersigned issued a report and recommendation (Doc. No. 8, First Action), that is incorporated by reference herein, recommending that the First Action be dismissed based on frivolity, because Plaintiff's discrimination claim had been fully litigated in State Court.  The analysis in the report and recommendation focused on the doctrine of res judicata.  The report and recommendation was adopted as the opinion of this Court on November 5, 2012, and the First Action was dismissed.  Order (Doc. No. 11, First Action).

### B. Plaintiff's Instant Case

About six (6) weeks after the First Action was dismissed, Plaintiff filed the instant case. Plaintiff entitled her Complaint, "Complaint: Civil Rights Violations Race and Religious Discrimination." Compl. at 1 (capitalization omitted). Plaintiff admits at the outset that "[t]his [C]omplaint has roots in a previous discrimination case that was adjudicated in State Court." Id. Plaintiff advises that "[t]he State Court dismissed [her] case with prejudice." Id. (internal quotations omitted). Plaintiff lists two (2) errors that she believes the State Court committed. Id. First, Plaintiff states that "[t]he defendants [in State Court] were allowed to use case laws that had nothing to do with race and religious discrimination." Id. Second, Plaintiff complains that "[t]he [State] Court allow[ed] the defendants to use the 1st Amendment as their defense to protect them when they discriminate[d] based on race and religion." Id. Plaintiff recognizes that she filed a previous case in this Court that is similar to the instant case (the First Action). See id. at 3. Plaintiff alleges that she has "new evidence" and that she is "going to connect the new evidence to the already adjudicated case so that it will not violate res judicata." Id. Plaintiff states that the "new evidence contains the same Christian book, but in different periods." Id. Plaintiff then summarizes various times she contacted CBS TV 47 for an interview, and she claims that those facts were not presented or argued in State Court. See id. at 4-5.

## II. Applicable Law

The Court may, upon a finding of indigency, authorize the commencement of an action without requiring the prepayment of costs, fees, or security. 28 U.S.C. § 1915. However, the Court's decision to grant in forma pauperis status is discretionary. See Pace v. Evans, 709

-4-

F.2d 1428, 1429 (11th Cir. 1983).  While a litigant need not show he or she is "absolutely destitute" to qualify for pauper status under section 1915, a litigant does need to show an inability "to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." Martinez v. Kristi Kleaners, Inc., 364 F.3d 1305, 1307 (11th Cir. 2004).  It appears from the Motion that Plaintiff is likely unable to pay the filing fee.[4]

Nonetheless, a court receiving an application to proceed in forma pauperis must dismiss the case sua sponte if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  A claim may be considered frivolous if an affirmative defense would defeat the action. See, e.g., Clark v. State of Ga. Pardons & Paroles Bd., 915 F.2d 636, 639-40 (11th Cir. 1990); Algieri v. Vanaski, No. 6:08-cv-766-Orl-31GJK, 2008 WL 5147353, at *4 (M.D. Fla. Dec. 8, 2008) (unpublished) (recognizing that "[w]hen the defense is apparent from the face of the complaint or the court's records, courts need not wait and see if the defense will be asserted in a defensive pleading") (citation omitted).  Res judicata and collateral estoppel are affirmative defenses that may justify dismissal of a claim as frivolous. Clark, 915 F.2d at 641 n.2 (citing Wilson v. Lynaugh, 878 F.2d 846 (5th Cir. 1989); Patterson v. Aiken, 628 F. Supp. 1068, 1076 (N.D. Ga. 1985)); Slater v. U.S. Dep't of Veteran Affairs, No. 6:08-cv-160-Orl-22GJK, 2008 WL 977225, at *3 (M.D. Fla. Apr. 9, 2008) (unpublished).

---

[4] In the First Action, just as in this action, Plaintiff sought to proceed in forma pauperis.  Although the cases were filed only about eight (8) months apart, there is a material difference between Plaintiff's affidavits that causes concern.  In her first affidavit, Plaintiff listed her mailing address but left blank the portion of the form asking if she owned any real property, leaving the impression she did not.  Now, Plaintiff lists the same mailing address and claims that she owns a home at that mailing address worth $112,000, of which she owes $43,000.  Both affidavits were sworn to by Plaintiff under penalty of perjury.

"Res judicata or claim preclusion refers to the preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit." I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986) (citations omitted).  This doctrine not only bars "the precise legal theory presented in the previous litigation, but [it bars ] all legal theories and claims arising out of the same operative nucleus of fact." Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1356-57 (11th Cir. 1998) (quoting Manning v. City of Auburn, 953 F.2d 1355, 1358 (11th Cir. 1992)).  The test for a common nucleus of operative fact is "whether the same facts are involved in both cases, so that the present claim could have been effectively litigated with the prior one." In re Piper Aircraft Corp., 244 F.3d 1289, 1301 (11th Cir. 2001) (citation omitted).

### **III.  Analysis**

The factual allegations and discrimination claim raised in this Complaint are nearly identical to the allegations and claim Plaintiff presented in the First Action, that in turn, are identical to those raised in the State Court action.  Plaintiff now attempts to avoid the application of res judicata by including "new evidence."  Compl. at 4.  Plaintiff's "new evidence," however, fails to remove Plaintiff's case from the strictures of res judiciata.  Res judicata not only bars "the precise legal theory presented in the previous litigation, but [it bars] all legal theories and claims arising out of the same operative nucleus of fact." Pleming, 142 F.3d at 1356-57 (quoting Manning, 953 F.2d at 1358).  This case, therefore, suffers from the same fatal flaws as the First Action.

## IV. Conclusion

Upon review of the allegations raised in the Complaint, the undersigned finds that this case is due to be dismissed for the same reasons the First Action was dismissed.[5] Accordingly, it is

**RECOMMENDED:**

1.   That the Affidavit of Indigency (Doc. No. 2), that the Court construes as a Motion to Proceed In Forma Pauperis, be **DENIED**.

2.   That this case be **DISMISSED** as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

3.   That the Clerk of Court be directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on March 22, 2013.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

jlk
Copies to:

Honorable Marcia Morales Howard
United States District Judge

*Pro Se* Party

---

[5] Often, it is appropriate to provide a pro se plaintiff an opportunity to amend his or her complaint "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." See Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotations and citation omitted). No such opportunity need be given here because, given the findings outlined above, any amendment would be futile.